(106 So. 550)

No. 25627.

**COGNEVICH et al. v. BLAZIO et al.**

**EVASOVICH v. COGNEVICH et al.**

(Nov. 27, 1922.  On the Merits, Nov. 2, 1925. Rehearing Denied Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Appeal and error** ☞801(5)—**Whether devolutive appeal should be dismissed held to present question of law to be determined from the record.**

Whether devolutive appeal should be dismissed for failure to perfect suspensive appeal presents only question of law to be determined from face of record; appellant's ability to furnish bond being immaterial.

2. **Appeal and error** ☞1106(2)—**Supreme Court is vested with full power to decide whether devolutive appeal should be dismissed, and remand to trial court unnecessary.**

The Supreme Court is vested with full power to decide whether devolutive appeal should be dismissed, and remand to trial court to determine such question will not be ordered.

3. **Appeal and error** ☞805—**Right to devolutive appeal held not abandoned by failure of party to perfect suspensive appeal.**

Appellant, by failing to perfect suspensive appeal, does not lose right to devolutive appeal, since he may obtain in same or different orders both a suspensive and devolutive appeal, and perfect either at his option.

On the Merits.

4. **Specific performance** ☞105(3)—**Suit for specific performance, brought four years after contract for exchange of property was made, held not to come too late.**

A suit for specific performance, brought four years after contract for exchange of property was made, did not come too late, where contract, providing that title was to be conveyed as soon as plaintiff's agent perfected it, was partially executed by transfer of possession of land, and payment to defendant of agreed excess value, and defendant for a period of two years, though in position to transfer title, took no action to rescind contract, but, after death of his wife, and at time he made demand on plaintiff to transfer title, he was not able to convey clear title until he qualified as tutor for his minor children, and in meantime title which defendant was to receive had been cleared and perfected.

5. **Specific performance** ☞46—**Written authority by plaintiff's agent to convey land held not necessary for decree for specific performance, where contract partially executed and confirmation of agent's contract could have been shown.**

Where defendant was put in actual possession of property under contract to exchange land, and thus was in a position under Civ. Code, art. 2275, to show by means of interrogatories that plaintiff had authorized brother to execute contract, or had acquiesced in or confirmed contract during time when defendant was able to convey title, the defendant can-

not defend suit for specific performance on ground that plaintiff's agent had no written authority to convey land.

**6. Exchange of property ⊜⇒4—Contract for conveyance of land to a party and his coheirs, among whom was plaintiff, held to give plaintiff, on acquiring sole ownership, right to enforce contract.**

Under contract for exchange of land, providing that defendant's land was to be conveyed to another and his coheirs, among whom was plaintiff, the plaintiff, on acquiring sole ownership of property, had duty of transferring property as one of parties to contract, and acquired right to receive property from defendant.

**7. Appeal and error ⊜⇒1152—Judgment for specific performance may be amended by excepting therefrom land not owned by one of parties.**

In affirming judgment for specific performance of contract for exchange of property, court may amend judgment by excepting from land to be conveyed by defendant a portion not owned by defendant contained in contract by oversight.

**8. Judgment ⊜⇒747(½)—Judgment for specific performance of contract for exchange of land held to preclude recovery of land by defendant in petitory action.**

Where parties entered into possession of each other's property under contract for exchange of property, allowance to plaintiff of specific performance precludes defendant from recovering possession of his land in a petitory action.

Appeal from Twenty-Ninth Judicial District Court, Parish of Plaquemine; Leander H. Perez, Judge.

Petitory action by John Cognevich and others against Morris Blazio and others, consolidated for trial with suit for specific performance of contract of exchange by Mrs. Anastasia Evasovich (wife of John Cace) against John Cognevich and others. Judgment for defendants in the petitory action, and plaintiffs appeal. Affirmed. Judgment for plaintiff in the other action, and defendants appeal. Modified and affirmed, with directions.

See, also, post, p. 1035, 106 So. 556.

Milton E. Schaffer, of New Orleans, for appellants.

John R. Perez, of New Orleans, for appellees.

OVERTON, J. In both of these consolidated cases, John Cognevich, individually and as natural tutor of his minor children, and Sarah Munstermann obtained an order on July 13, 1922, for a suspensive appeal from a final judgment rendered against them on June 30th of that year. The bond was fixed at $1,000. The appellees then filed a rule in the court below to dismiss the appeal on the ground that the order was granted after the expiration of the delay for taking a suspensive appeal. No disposition seems to have been made of the rule. The bond for the suspensive appeal was not furnished, and on August 25, 1922, Cognevich, individually, and as natural tutor, and Mrs. Munstermann obtained an order for a devolutive appeal from the judgment against them. The bond for this appeal was fixed at $400, and was furnished. The transcript was filed in this court before the expiration of the return day fixed in the order granting the devolutive appeal.

The appellees now contend that the order for a devolutive appeal was improvidently granted by the court below, since appellants, by obtaining an order for a suspensive appeal, and by failing to perfect it by furnishing the bond required therefor, when they were able to furnish it, and by failing to file the transcript under the order for that appeal, have lost their right of appeal altogether by abandonment.

They further contend that evidence should be taken on the ability of the appellants to furnish the suspensive appeal bond; that the case should be remanded for that purpose; and, moreover, that it should be remanded for the reason that the lower court is the proper tribunal to determine the question as to whether appellants have lost their right

to a devolutive appeal by failing to perfect the suspensive appeal granted; and that this court is without jurisdiction to determine that question. Should we hold, however, that we are vested with power to determine that question, then appellees move that we dismiss the appeal on the ground of its abandonment.

[1-3] It is immaterial whether the appellants were able to furnish the suspensive appeal bond or not, and, therefore, the question presented involves nothing more than one of law that may be determined from the face of the record. It is clear that this court is vested with full power to decide the question, and is the proper tribunal to do so; and, hence, from no standpoint is it necessary, or even proper, to remand the case. It is equally clear that one, by obtaining an order for a suspensive appeal, does not, upon failure to perfect that appeal by filing the required bond, abandon his right to a devolutive-appeal. Daniel & James D. Edwards v. Marin, 28 La. Ann. 567; Barrow v. Pope & Brown, 28 La. Ann. 459. One desiring to appeal may obtain, even in the same, which is common practice, or in different orders, both a suspensive and a devolutive appeal, and perfect either at his option. Funke v. McVay, 21 La. Ann. 192.

For the reasons assigned, the motion is denied.

### On the Merits.

On November 3, 1916, Luke Evasovich, acting for himself and coheirs, and John Cognevich entered into the following agreement, 'to wit:

"Whereas, Mr. Luke Evasovich, for account of himself and coheirs, has agreed to transfer unto Mr. John Cognevich the following described property, to wit:

"A certain piece of property, together with the improvements thereon, situated on the right bank of the Mississippi river, at a distance of about 75 miles below the city of New Orleans, measuring and having ½ arpent front on said river by a depth of 40 arpents, more or less, bounded above by lands belonging to Jack Ja-

comine, and on the lower side by lands of Steve Mistich; and

"Whereas, in consideration of the transfer so made by the said Luke Evasovich et al., the said John Cognevich in return and consideration agrees to transfer unto the said Luke Evasovich the following property, to wit:

"A certain piece of property, together with the improvements thereon situated on the right bank of the Mississippi river, at a distance of about 79 miles below the city of New Orleans, measuring ½ of 1 arpent front on the said river by a depth of 40 arpents, more or less, bounded above by lands of John F. Buras and below by lands of J. D. Elston; and

"Whereas, it has been agreed that the value of the two properties being unequal, in that the piece transferred by the said John Cognevich is worth over and above the value of the piece transferred by the said Luke Evasovich et al. in the sum of three hundred ($300), the said Luke Evasovich does hereby give unto the said John Cognevich the said sum of three hundred dollars ($300) which the said John Cognevich, here present and accepting, acknowledge due receipt thereof.

"It is further agreed that, just as soon as the said Luke Evasovich and his coheirs succeed in having certain legal proceedings perfected towards clearing the title to the property which he and his coheirs desire to and obligate themselves to transfer to the said John Cognevich, the said parties hereto will execute and make title, one to the other, of the respective pieces of property herein described.

"Signed in duplicate this 3d day of November in the year 1916 in the presence of Herman Schoenberger and Milton E. Schaefer.

        "[Signed]   Jno. Cognevich.
               "Luke Evasovich.
"Witnesses: H. A. Schoenberger.
             "M. E. Schaefer."

The property described in the foregoing instrument, which Luke Evasovich for himself and coheirs agreed to transfer to John Cognevich, belonged at the time of her death to Mrs. Stephany Evasovich, mother of Anastasia Evasovich Cace, the plaintiff in one of these consolidated suits. At the time the instrument was executed Mrs. Stephany Evasovich was dead, and had been dead for several years. She left a will by which she bequeathed to her husband the usufruct of the property, which Luke Evasovich later bound himself to transfer to Cognevich, and

the naked ownership thereof to her daughter, Mrs. Cace. At the time the instrument was signed this will had not been probated. Luke Evasovich, therefore, at that time, had no color of title to the property, nor did any of his coheirs, with the exception of his sister, Mrs. Cace, and, as to her, the usufruct of the property, which had been left her, was bequeathed to her father. Such was the condition of the title to the property when Luke Evasovich signed the foregoing instrument, agreeing to transfer the property in his own behalf and in behalf of his coheirs to Cognevich, and this condition of the title was the reason for inserting the last paragraph in the agreement to the effect that title would be transferred so soon as Luke Evasovich and his coheirs would succeed in perfecting the title to the property by legal proceedings. It may be added that, when Luke Evasovich signed the instrument, he had no written power of attorney from Mrs. Cace, or from any of his remaining coheirs, to bind them. However, notwithstanding that fact, and notwithstanding the condition of the title, Cognevich was placed in possession of the property, which Luke Evasovich, for himself and coheirs, bound himself to convey to Cognevich, and Cognevich surrendered, upon his part, possession of the property which he bound himself to give in exchange.

The property which Cognevich was to transfer in exchange belonged to the community of acquêts and gains that existed between him and his wife. Almost 2 years to the day after the signing of the agreement Cognevich's wife died intestate, leaving eight children, all of whom, save one, Mrs. Thomas L. Munstermann, were minors.

In the 2-year interval between the signing of the agreement to make the exchange and the death of Mrs. Cognevich, and even thereafter, Cognevich from time to time made inquiry of Luke Evasovich as to when he would be ready to transfer title, and the answer usually was that title would be transferred so soon as the succession of his mother, Mrs. Evasovich, would be settled.

In 1917 or 1918 an effort was made to settle amicably the succession of Mrs. Evasovich, but the effort failed. The settlement of the succession was again taken up in 1920. Stephany Evasovich, the father of Mrs. Cace, at that time renounced the usufruct of the property, the naked ownership of which had been bequeathed to Mrs. Cace, and which Luke Evasovich had bound himself, in his own behalf and in behalf of his coheirs, to transfer in full ownership to Cognevich by the agreement of November 3, 1916. Judgment was finally signed on June 30, 1920, recognizing Mrs. Cace as the legatee of the property, which, by the agreement, mentioned, was to be transferred to Cognevich, and sending her into possession of the same, unincumbered by the usufruct, which had been renounced by her father.

On August 22, 1920, which was some 50 days after Mrs. Cace had been sent into possession of the property, Cognevich addressed a communication to Luke Evasovich, who had signed the agreement for himself and his coheirs, in which Cognevich called attention to that agreement, and in which he made the following statement and demand, to wit:

"In view of the fact that I have consistently asked that you carry out the terms of your part of this contract (referring to the agreement of November 3, 1916) which you have failed up to the present time to do, I therefore beg to advise you that if you do not make title to this property to me within 30 days of this date, giving me good and sufficient title, that I shall consider the agreement entered into between you and me, as of date November 3, 1916, of no effect whatsoever, and shall return to you the sum of $300, which I have received, calling on you to make proper reimbursement of all revenues received from said property, I in turn doing likewise, so that we may be placed in the same position that we were as of date November 3, 1916."

Luke Evasovich received the foregoing communication a day or two following its date, and on August 24, 1920, he met Cogne-

vich and told him that he had received it; that the succession of Mrs. Evasovich had been settled; that his sister, Mrs. Cace, was the owner of the property; that he had delivered the communication to her, and informed him that she was in position to make the transfer. On September 17, 1920, Mrs. Cace wrote Cognevich that her husband was out of the state, and would not be home probably until the 21st, and that, upon his arrival, they would go to Buras to meet him to have a date fixed for an early settlement, and on September 21st she wrote counsel for Cognevich that her husband would probably be home the next day; and that he and she would go to Buras to meet him for the purpose stated above in her letter to Cognevich. On September 20th both Luke Evasovich and Mrs. Cace wrote Cognevich asking him to let them know when he would be ready to make the transfer, and informing him that they were ready and were waiting on him. On September 24th both Mr. and Mrs. Cace wrote counsel for Cognevich requesting him to please write them immediately when Cognevich would be ready to pass the act of exchange, and advising him that they were in Buras twice that week to see him relative to the matter, but were unable to meet him. No response appears to have been made to these letters.

After Cognevich made his demand of August 22, 1920, on Luke Evasovich to transfer title, he took steps to qualify as natural tutor to his minor children. Letters of tutorship were issued to him on February 15, 1921; and, on March 2, 1921, he, as surviving spouse in community, and Mrs. Munstermann and his minor children, as the heirs of his wife, were sent into possession of the property, which he, as head and master of the community that had existed between him and his wife, had bound himself to transfer, in exchange, by the agreement of November 3, 1916.

After Cognevich had qualified as natural tutor to his minor children, he, his minor children, through him as their tutor, and Mrs. Munstermann brought a petitory action to recover the property that he had bound himself during the life of his wife, by the agreement of 1916, to transfer. In bringing this suit, the plaintiffs therein made no reference to that agreement, but alleged that one Morris Blazio was in the actual possession of said property without any title thereto, and without right to remain in possession of the same, and prayed that Blazio, as the one actually in possession of the property, be cited as defendant in the suit. Blazio answered the suit, disclaiming title to the property, and averring that he was merely employed to work it for the account of Mrs. Cace, who, as he understood, was the owner thereof and the person in actual possession of the property.

After Blazio answered, Cognevich, for himself, and as tutor to his minor children, and Mrs. Munstermann amended their petition by making Mrs. Cace defendant in the suit.

Mrs. Cace filed an answer to the suit in which she averred that she was lawfully in possession of the property, and set up the agreement of November 3, 1916, under which she acquired possession, and asked that the agreement be specifically enforced. These proceedings constitute the first suit named in the title of this appeal.

On March 19, 1921, shortly after Cognevich and others had instituted their petitory action, and before the answer thereto was filed, Mrs. Cace brought suit against Cognevich, his minor children, and Mrs. Munstermann for specific performance of the agreement of November 3, 1916. In this suit she sets out the substance of that agreement, and alleges that she fully recognized and acquiesced in the agency of her brother, Luke Evasovich, in representing her therein, and recognizes the binding effect of the

contract itself. She also alleges that, so soon as legal proceedings were had perfecting the title to the property bequeathed to her by her mother, which Luke Evasovich, for himself and coheirs, had agreed to transfer to Cognevich, in exchange, she called upon Cognevich to specifically perform his part of the agreement, but that Cognevich failed and refused to carry out the contract. Cognevich, both personally and as natural tutor to his minor children, and Mrs. Munstermann filed answers to this suit, putting at issue the demands of plaintiff therein. These proceedings constitute the second suit named in the title of this appeal. The two suits were consolidated in the trial court, and consequently have been brought here as one appeal.

The right of Cognevich and his coplaintiffs to recover in the petitory action, instituted by them, is dependent upon the determination of the suit filed by Mrs. Cace for specific performance, for,- if Mrs. Cace is entitled to have the contract of November 3, 1916, carried out, plaintiffs in the petitory action will not then be entitled to recover the land for which they there sue, but will have to complete the conveyance of it to Mrs. Cace. Hence we shall dispose of the suit for specific performance before considering the petitory action.

[4] It was said in Joffrion v. Gumbel, 123 La. 391, 48 So. 1007, that—

"The general rule is that he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt, and eager to perform the contract on his part. Therefore unreasonable delay in doing these acts which are to be done by him will justify and require a denial of relief. No rule respecting the length of delay which will be fatal to relief can be laid down, for each case must depend on its peculiar circumstances"—citing Meidling v. Trefz, 48 N. J. Eq. 638, 23 A. 824, and other authorities.

Cognevich and his codefendants in the suit for specific performance invoke the foregoing rule, and contend that the delay of nearly 4 years that occurred before any attempt was made to convey title to them relieved them of all obligations, if any, that existed on their part to carry out the contract. The rule invoked by them and stated in the case, cited supra, is sound, but before it is applied in this case to defeat the demand for specific performance, the facts of the case should be examined to ascertain whether the delay, in this instance, is fatal. The contract under consideration is a bilateral contract. By it the parties to it bound themselves absolutely to exchange certain pieces of real estate. One of the parties to the contract (Cognevich) was paid in cash the excess value of the property which he bound himself to transfer in exchange. Both parties to the agreement were placed in actual possession of the property which he or they were to receive. Therefore it may be said that the contract is one which was partially executed, or carried out, at the time it was signed, or immediately thereafter. All that remained to be done was to transfer title to the property; the parties in the meantime enjoying the use of the property which each was to receive in exchange. The actual transfer of title could not take place until the title to the property, which Cognevich was to receive, was cleared and perfected by legal proceedings to be had, and this the contract took into account, for it provides that title to the property which each is to convey shall be transferred so soon as Luke Evasovich and his coheirs succeed in clearing and perfecting, by legal proceedings to be had, the title to the property which Cognevich was to receive. Up to the time that Cognevich's wife died, which was practically 2 years after the agreement had been entered into, Cognevich was in position to transfer title to the property which he had obligated himself to convey. However, during those 2 years, while he inquired from time to time as to when the contract would be consummated by the transfer of titles, yet he took no steps

to rescind the contract and restore matters to the same condition in which they were prior to the contract, but let matters rock along, enjoying in the meantime the use of the cash consideration that had been paid him and the use of the property he was to receive. After the death of Cognevich's wife, the property which he was to convey in exchange could not be transferred until his minor children were provided with a tutor, and it was incumbent on him to qualify as their natural tutor. This he did not do until after the succession of Mrs. Evasovich had been opened, her will probated, and Mrs. Cace sent into possession of the property, free from the usufruct thereon, which Cognevich was to receive, and, hence, until after the title to the property, which he was to receive, was thus cleared and perfected. After the death of his wife, Cognevich still retained the cash consideration that had been paid him and the possession of the property that he was to receive in exchange. When he made demand on Luke Evasovich to consummate the contract by conveying title, the title which he, upon his part, was to convey could not be transferred for the reason that he had not then qualified as natural tutor to his minor children. Under these facts, and especially in view of the fact that the contract is one that has been partially executed, and under which the parties to it were placed in possession of the property which it was agreed that they should receive, and have remained in possession of it, we are not of the opinion that the demand of Mrs. Cace for the complete performance of the contract comes too late. Under the facts stated, it would hardly be just to permit Cognevich and his codefendants to withdraw from the contract because of the delay mentioned.

[5] Cognevich and his codefendants also contend that Luke Evasovich had no written power of attorney to sign the contract for Mrs. Cace; that, as the contract involved the transfer of real estate, a written power of attorney from her, authorizing Luke Evasovich to act for her in signing the contract, was necessary, and that Mrs. Cace could not, some 4 years later, refuse to carry out the contract or ratify it, as her interests might appear to call for, and hence could not ratify it after that lapse of time to their prejudice, and especially after the death of Mrs. Cognevich.

There can be no question that Luke Evasovich should have had a written power of attorney from Mrs. Cace, but it does not follow that the contract, for that reason, was null as to her. Cognevich, following the execution of the contract, was placed in actual possession of the land which it was agreed he should receive, and, being in the actual possession thereof, was in position to show by means of interrogatories on facts and articles, addressed to Mrs. Cace, that she had authorized her brother to act as her agent in executing the contract, or that she had acquiesced in the contract or confirmed it long prior to the death of Mrs. Cognevich. Civil Code, art. 2275. And, in this connection, it may be said that the conclusion is irresistible that Mrs. Cace knew that Cognevich was in possession of the property that he was to receive, and why he was in possession of it, and that she authorized the contract, or at least had confirmed it, long prior to the death of Mrs. Cognevich. Under these circumstances we are not of the opinion that defendants, on this ground, are entitled to relief against the enforcement of the contract.

[6] It is also urged by defendants, in one of the answers filed, that there is no contract on their part to transfer the land claimed by them to Mrs. Cace, and that, if any contract exists at all, obligating them to convey the land, the conveyance is to be made, not to Mrs. Cace, but to Luke Evasovich.

The contract provides, in effect, that the land to be conveyed by Cognevich shall be

transferred to Luke Evasovich and his co-heirs, among whom is Mrs. Cace. It was evidently considered possible at the time the contract was entered into that in the settlement of the succession of Mrs. Evasovich this particular piece of property would fall in full ownership to all of her heirs. However, in the settlement of that succession, by agreement between the heirs and the usufructuary, that piece of property fell in full ownership to Mrs. Cace. As the remaining heirs had by that agreement surrendered any possible right they might have had to the property to be transfered to Cognevich, the duty to make the transfer to him devolved on Mrs. Cace as one of the parties to the contract, and she thereby acquired the right to receive the entire property that Cognevich bound himself to convey in exchange. Cognevich and the heirs of his wife cannot complain, because they are receiving in exchange that which the contract provides shall be so given.

Our conclusion is that the record presents no sufficient reason why the contract in this instance should not be specifically enforced. The contract has been partially executed. The parties to it are in possession of the respective pieces of property which it was agreed they should receive, and have been in possession thereof since the execution of the contract. The conditions thus created should not be disturbed without strong reasons, and we find none such in this instance.

[7] However, in affirming the judgment ordering specific performance, it will be necessary to amend it by excepting from the land to be conveyed by Cognevich and his codefendants a lot of ground sold to the school board of the parish of Plaquemines, measuring 28 feet front on the public road as the road existed on January 18, 1906, by a depth of 60 feet, situated at the lower front corner of the land to be conveyed by Cognevich and his codefendants. This small strip of land was excepted from the conveyance in the deed by which Cognevich acquired title in 1906, and was never owned by him. The failure to except it in the contract of exchange was manifestly an oversight. Defendants have no right to complain of the correction of the error, and we assume that Mrs. Cace has no complaint to make in that respect.

[8] As Cognevich and his children must convey to Mrs. Cace the land they sue for in the petitory action, it follows as a matter of course that they cannot recover the land from her in that action. In other words. the decision of the suit for specific performance is decisive of the petitory action.

It should be said, before closing, that Cognevich and his children filed an exception of no cause of action in the suit for specific performance. We have considered the exception, but do not find it well founded. The exception has been, in effect, disposed of in considering the merits.

For the reasons assigned, the judgment appealed from in said petitory action is affirmed, and the judgment appealed from in said suit for specific performance is amended by excepting from the land, ordered to be conveyed to said Mrs. Cace by the defendants therein, a lot of ground sold to the school board of the parish of Plaquemines, measuring 28 feet front on the public road, as the road existed on January 18, 1906, by a depth of 60 feet, situated at the lower front corner of said land ordered to be conveyed herein to said Mrs. Cace; and, as thus amended, that said judgment be affirmed; and, as so amended and affirmed, that it stand in lieu of an act of exchange should the parties at interest fail to execute such an act. It is ordered that appellants pay the costs of this appeal.